IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 3 1 2006

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

| | | |
|---|---|---|
| MARY A . CHEWNING | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:05CV00522 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| JO ANNE B. BARNHART, | ) | By: Hon. Glen E. Conrad |
| Commissioner of Social Security | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

The plaintiff has filed this action challenging the final decision of the Commissioner of

Social Security denying the plaintiff's claim for a period of disability and disability insurance

benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423. Jurisdiction of

this court is pursuant to 42 U.S.C. § 405(g).

The court's review is limited to a determination as to whether there is substantial

evidence to support the Commissioner's conclusion that the plaintiff failed to meet the conditions

for entitlement established by and pursuant to the Act. If such substantial evidence exists, the

final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th

Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence,

considering the record as a whole, as might be found adequate to support a conclusion by a

reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, Mary A. Chewning, was born on July 18, 1949. Ms. Chewning has a

limited education.[1] She has worked as a housecleaner and a waitress. She last engaged in

_____

[1]The plaintiff provided different reports of her educational history, ranging from
completing the seventh grade to completing the tenth grade. (T.R. 178, 1530, 1553, 1584, 1629).

substantial gainful employment in 1996. On July 16, 1998, Ms. Chewning filed an application for disability insurance benefits. The plaintiff alleged that she became disabled for all forms of substantial gainful employment on May 16, 1996, and that she has remained disabled to the present time. The record reflects that the plaintiff met the insured status requirements of the Act through the first quarter of 1998, and not thereafter. See generally, 42 U.S.C. §§ 414 and 423. Consequently, Ms. Chewning is entitled to disability insurance benefits only if she has established that she became disabled for all forms of substantial gainful employment on or before March 31, 1998. See generally, 42 U.S.C. §§ 414 and 423.

Ms. Chewning's claim was denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated June 5, 2001, the Appeals Council vacated the decision issued by the Law Judge on December 11, 2000, and remanded the matter to the Law Judge for further proceedings. Supplemental hearings were held before the Law Judge on May 10, 2002 and July 9, 2002. In a decision issued on July 26, 2002, the Law Judge found that the plaintiff was not entitled to benefits. The Appeals Council vacated the Law Judge's opinion for an error of law on December 6, 2002, and remanded the case to another Administrative Law Judge. The order specified that on remand, the Law Judge was to obtain further information about the duties involved in the claimant's work as a housecleaner and compare this information to her residual functional capacity during the period on or before the date she was last insured.

After a supplemental hearing, the Law Judge issued a decision on August 27, 2004. The Law Judge found that the plaintiff suffered from the following impairments: back disorder, depression, and anxiety. The Law Judge further determined that while Ms. Chewning's

2

impairments were severe within the meaning of the administrative regulations, they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. See 20 C.F.R. § 404.1520(d). The Law Judge concluded that Ms. Chewning retained the residual functional capacity to perform work that included lifting and carrying twenty pounds occasionally and ten pounds frequently, and sitting, walking, or standing for six hours each in a work day. The Law Judge also concluded that Ms. Chewning's depression resulted in limitation to unskilled work activity in a nonstressful environment where she would have limited contact with the public. Given such a residual functional capacity, the Law Judge held that the plaintiff was disabled for all past relevant work roles. However, the Law Judge found that Ms. Chewning retained the residual functional capacity for the full range of light work. Given such a residual functional capacity, and after consideration of plaintiff's age, education, and prior work experience, as well as the testimony of a vocational expert, the Law Judge determined that there are jobs, which exist in significant number in the national and regional economies, that plaintiff could have performed. Accordingly, the Law Judge concluded that Ms. Chewning was not disabled, and therefore she is not entitled to a period of disability and disability insurance benefits. Plaintiff then filed a request for review with the Social Security Administration's Appeals Council. On July 28, 2005, the Appeals Council denied the plaintiff's request and adopted the Law Judge's opinion as the final decision of the Commissioner. Having exhausted all available administrative remedies, the plaintiff now appeals to this court.

While the plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether the plaintiff was disabled for all forms of substantial gainful employment. See 42 U.S.C. § 423(d)(2). There are four elements of proof which must be

3

considered in making such an analysis. These elements are summarized as follows: (1) objective

medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3)

the subjective evidence of physical manifestations of impairments, as described through a

claimant's testimony; and (4) the claimant's education, vocational history, residual skills and age.

Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850,

851 (4th Cir. 1962).

After a review of the record in this case, the court is constrained to conclude that the

Commissioner's final decision is supported by substantial evidence. Ms. Chewning has a variety

of physical and emotional complaints, for which she has been treated by a number of doctors.

The medical record establishes that Ms. Chewning is disabled at the present time. However, the

court must conclude that substantial evidence supports the Law Judge's finding that Ms.

Chewning's physical and emotional impairments were not so severe as to prevent performance of

unskilled work at the light level of exertion during the period prior to the termination of insured

status on March 31, 1998.

In May 1996, the alleged date of onset, the plaintiff was treated at the emergency room

after a motor vehicle accident. The plaintiff complained of pain in her posterior neck, anterior

chest and abdomen, and left shoulder. (T.R. 283). X-rays and a CT scan were negative, and the

plaintiff was placed on Anaprox and Lortab. (T.R. 283). The plaintiff was seen by Dr. Richard

Eckert on June 17, 1996. (T.R. 301). He injected a myofascial trigger point and put the plaintiff

on Naprolin and Lortab, but she only had one day of relief and had increasing low back pain.

(T.R. 300-01). Dr. Eckert found that the plaintiff had a full range of motion. (T.R. 300). On

July 2, 1996, the plaintiff also reported that she was not able to go back to work. (T.R. 301). Dr.

4

Eckert changed her prescription from Lortab to Ultram, and prescribed physical therapy. (T.R. 301).

In August of 1996, the plaintiff began treating with Dr. Cecil Knox. The plaintiff complained of headaches and neck pain. (T.R. 418). In February of 1997, Dr. Knox noted that the plaintiff continued to have anxiety with a near panic response, and significant stress associated with her son's incarceration. (T.R. 414). Dr. Knox also noted continued pain symptomatology and daily headaches with continued upper quadrant myofascial pain symptomatology. (T.R. 414).

The plaintiff was hospitalized a number of times during the relevant period. In July 1997, the plaintiff was hospitalized for left-sided chest pain and shortness of breath. (T.R. 598). Her cardiac examinations were negative. (T.R. 600). The plaintiff was scheduled for follow up group stress therapy and was given a prescription for Klonopin to help relieve some of her stress and anxiety. (T.R. 600). In August of 1997, the plaintiff went to the emergency room, complaining of shortness of breath and sharp pains in her chest and left arm. (T.R. 307). The plaintiff again reported to the emergency room on December 13, 1997, and complained of chest pain and shortness of breath. (T.R. 313). In February 1998, the plaintiff was hospitalized for a total abdominal hysterectomy. (T.R. 334). After the operation, Dr. J. Smith gave a psychiatric consult, and started the plaintiff on Klonopin and Paxil. (T.R. 335). His impression was of major depression. (T.R. 335).

In May of 1999, the plaintiff was seen by Dr. Anupma Saini. The plaintiff complained of pain in her knees, calves, legs, lower back, and elbows. (T.R. 425). She also complained of

5

insomnia, difficulty falling asleep, lack of energy, depression, and loss of appetite. (T.R. 425). Dr. Saini diagnosed the plaintiff with depression and fibromyalgia. (T.R. 426).

On September 13, 2000, Dr. Knox completed an assessment of the plaintiff's ability to do work-related activities prior to March 31, 1998. Dr. Knox found that the plaintiff could lift less than ten pounds on an occasional or frequent basis, could stand or walk less than two hours in an eight hour day, could sit less than two hours during an eight hour day, must walk around every fifteen minutes, and would need to shift positions at will and lie down at unpredictable intervals every two to four hours. (T.R. 463-64). In support of these findings, Dr. Knox reported that the plaintiff had severe and chronic myofascial pain syndrome. (T.R. 465).

Although the medical record indicates that Ms. Chewning is disabled at the present time, the court believes that the Law Judge properly concluded that the plaintiff's physical and emotional problems were not disabling in severity in the period prior to the termination of insured status on March 31, 1998. While her pain specialist, Dr. Knox, produced overall assessments and opinions indicating the existence of total disabling subjective symptomatology, the Law Judge properly observed that the objective medical record fails to document the existence of such physical problems as could reasonably be expected to result in total disability. The Law Judge did not give Dr. Knox's opinion significant weight because the functional limitations were not consistent with the substantial evidence in the record. (T.R. 40). In particular, the Law Judge noted that x-rays of the cervical spine, chest, and left shoulder, EKG testing, CT scans of the abdomen, laboratory testing, and VQ scans all resulted in negative findings. (T.R. 40).

Case 7:05-cv-00522-GEC   Document 21   Filed 03/31/06   Page 6 of 11   Pageid#: 73

It is well settled that, in order to establish disability on the basis of pain, a claimant must demonstrate the existence of a medical impairment that reasonably could be expected to produce the pain alleged. Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). See also 20 C.F.R. §§ 404.1529(b) and 416.929(b). Though it is not necessary that the claimant's medical evidence prove the severity of the pain alleged, Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994), it is necessary that the claimant demonstrate that she suffers from some problem which is capable of causing the subjective symptomatology of which the claimant complains. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). The court finds that the Law Judge's decision to discount Dr. Knox's opinions is supported by the record and in accordance with Social Security Regulations. See 20 C.F.R. § 404.1527(d); see also 20 C.F.R. § 404.1527(e)(1).

Ms. Chewning also alleges that she experienced severe depression during the period in which she still enjoyed insured status. However, the Law Judge concluded that plaintiff had failed to establish that her depression contributed to an overall disability for all forms of work on or before March 31, 1998. While one of plaintiff's treating psychiatrists who first saw Ms. Chewning shortly after termination of insured status has opined that she was disabled during the earlier period, the court believes that the Administrative Law Judge properly relied on the clinical findings of plaintiff's treating physicians and the opinion of the medical advisor in concluding that her emotional problems did not reach disabling proportion during the period in which she still enjoyed insured status.

In December 1996, the plaintiff was evaluated by L. Shaner, of L.P.C. Counseling Service. Ms. Shaner noted that the plaintiff's high anxiety level was distorting life events, resulting in feelings of helplessness and hopelessness. (T.R. 501). Although Ms. Shaner noted

7

improvement by the end of January of 1997, the plaintiff was again complaining of depression and sleeplessness in December of 1997 and February of 1998. (T.R. 497-500).

The plaintiff began seeing Dr. Richard Frazier for symptoms of nervousness in May of 1998. The plaintiff reported nervousness, trouble sleeping, neck pain, and headaches. (T.R. 1461). The plaintiff related that she had experienced hyperventilation with stress since her car accident. (T.R. 1461). Dr. Frazier diagnosed major depression with chronic pain. (T.R. 1461).

In March of 1999, Dr. Knox referred the plaintiff to Licensed Professional Counselor Gloria M. Reiske. The plaintiff reported suffering from back pain, body pain all over, and sadness with depression. (T.R. 384). In April, Ms. Reiske noted that the plaintiff was sad, depressed, and anxious, and had continuous pain in her neck and back. (T.R. 385). At a later appointment, the plaintiff noted that she had concentration problems and was in constant pain in her neck, back, and legs. (T.R. 385). At a July appointment, the plaintiff stated that she felt very sad and depressed. Ms. Reiske again noted the plaintiff's problems concentrating. (T.R. 385). In August, the client did not appear as anxious and did not demonstrate crying behavior, but reported some depression. (T.R. 385). Ms. Reiske concluded that the plaintiff's attendance at appointments was erratic, and that the plaintiff had not fulfilled a treatment plan. (T.R. 386).

On September 19, 2000, Dr. Frazier completed an assessment of the plaintiff's ability to do work-related activities prior to March 31, 1998. He rated the plaintiff's mental abilities and aptitude needed to do unskilled work as "poor" in every area except ability "to accept instructions and respond appropriately to criticism from supervisors," which he rated as fair. (T.R. 486). In support, Dr. Frazier stated that the plaintiff suffered from depression and chronic

8

pain. (T.R. 487). Dr. Frazier also found that the plaintiff's impairments would have caused her to be absent from work more than three times a month during that period. (T.R. 488).

In this case, the issue is not whether Ms. Chewning was disabled due to her emotional problems, but rather when the date of onset of the disabling emotional problems occurred. Indeed, it is essentially undisputed that the plaintiff is disabled at the current time as a result of nonexertional limitations. In Bailey v. Chater, 68 F.3d 75, 79 (4th Cir. 1995), the United States Court of Appeals for the Fourth Circuit held that if the evidence of onset is ambiguous, the Law Judge must use the assistance of a medical advisor in order to render an informed opinion. Given the ruling of the Fourth Circuit in Bailey, the court is constrained to conclude that the Law Judge reasonably relied on Dr. Charles Holland's finding that the plaintiff was not disabled by her nonexertional limitations until January 1, 1999. (T.R. 1608). In this case, the Law Judge received testimony from Dr. Holland, a clinical psychologist who testified as a medical advisor at the administrative hearing. Dr. Holland thoroughly considered the reports from treating psychiatrist Dr. Frazier, and concluded that disabling nonexertional limitations could not be documented prior to January 1, 1999. Dr. Holland noted that the plaintiff had just five counseling sessions with Ms. Shaner from January of 1997 until February of 1998, and the only symptom documented was a significant sleep problem. (T.R. 1604-05). Dr. Frazier had issued the Beck Depression Inventory and suicide probability scale to the plaintiff, and found the plaintiff to be at the low level of mild depression and not suicidal. (T.R. 1605). In addition, Ms. Reiske noted that the plaintiff was noncompliant with treatment recommendations. (T.R. 1605-06). Dr. Holland therefore concluded that there was little evidence in the record to indicate a date of onset for a disabling nonexertional impairment prior to March 31, 1998. Therefore, the

9

court finds that the Law Judge's decision to discount Dr. Frazier's opinions is supported by the record and in accordance with Social Security Regulations. See 20 C.F.R. § 404.1527.

While there are conflicts in the evidence of the plaintiff's psychiatric limitations, this court must only decide if there is substantial evidence to support the Law Judge's conclusions. The testimony of the medical advisor, Dr. Holland, constitutes such substantial evidence. Therefore, the court is constrained to conclude that Ms. Chewning was not disabled prior to her date last insured of March 31, 1999.

Based on this review of the record, the court concludes that the Commissioner's final decision is supported by substantial evidence. The Law Judge's opinion, which was adopted by the Commissioner, demonstrates a thorough review of plaintiff's medical record, including the opinions of treating physicians, plaintiff's subjective complaints, and the extent to which such complaints are consistent with the objective medical evidence. The occupational limitations imposed by the Law Judge are consistent with the objective medical evidence. Therefore, the record supports the Commissioner's determination that the plaintiff retained the capacity to perform light, unskilled work, through March 31, 1998, and that she was not disabled during the relevant period.

Having found substantial evidence to support the Commissioner's determination that the plaintiff is not disabled, the court concludes that the Commissioner's final decision must be affirmed. In affirming the Commissioner's decision, the court does not suggest that the plaintiff was totally free of symptoms related to her back disorder, depression, and anxiety. However, there is substantial evidence to support the Law Judge's opinion that plaintiff could have performed certain light, unskilled work roles. Plaintiff's allegations of totally disabling

10

impairments are not supported by the objective medical findings. It must be recognized that the inability to work without any subjective complaints does not of itself render a claimant totally disabled. Craig v. Chater, 76 F.3d 585 (4th Cir. 1996). It appears to the court that the Administrative Law Judge gave full consideration to all the subjective factors in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, resolutions of conflicts in the evidence are a matter within the province of the Commissioner, even if the court might resolve the conflicts differently. Richardson v. Perales, supra; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, supra.

The clerk is directed to send certified copies of this opinion to all counsel of record.

DATED:     This 31st day of March, 2006.

_____
United States District Judge